Rev. 8/87)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Hampton Bensalem Associates, L.P. | DEFENDANTS<br>O'Neill Bensalem Properties, L.P.<br>O'Neill Bensalem Properties Acquisition Corporation<br>J. Brian O'Neill<br>Hampton N.E. Acquisition Corporation<br>Hampton Bucks County Associates, L.P. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Michael J. Cordone<br>Stradley Ronon Stevens & Young, LLP<br>2600 One Commerce Square<br>Philadelphia, PA 19103-7098<br>Telephone: (215) 564-8002 | ATTORNEYS (If Known)<br><br>Jami B. Nimeroff<br>Buchanon Ingersoll, PC<br>Eleven Penn Center, 14th Floor<br>1835 Market Street<br>Philadelphia, PA 19103-2985 |

| PARTY (Check one box only) | ☐ 1 U.S. PLAINTIFF | ☐ 2 U.S. DEFENDANT | ☒ 3 U.S. NOT A PARTY |
|---|---|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Deprivation of Debtor Hampton Bensalem Associates, L.P.'s limited partnership interest. Jurisdiction over this adversary proceeding is pursuant to 28 U.S.C. §§ 1334 and 157(a). Venue is proper pursuant to 28 U.S.C. § 1409(a). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

**NATURE OF SUIT**
(Check the one most appropriate box only)

| ☒ 454 To Recover Money or Property | ☐ 455 To revoke an order of confirmation of a Chap. 11 or Chap. 13 Plan | ☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action |
|---|---|---|
| ☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property | ☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523 | |
| ☐ 458 To obtain approval for the sale of both the Interest of the estate and of a co-owner in property | ☐ 436 To obtain an injunction or other equitable relief | ☐ 459 To determine a claim or cause of action removed to a bankruptcy court |
| ☐ 424 To object or to revoke a discharge 11 U.S.C. §727 | ☐ 457 To subordinate any allowed claim or Interest except where such subordination is provided in a plan | ☐ 498 Other (specify) |

| ORIGIN OF PROCEEDINGS (Check one box only) | ☒ 1. Original Proceeding | ☐ 2. Removed Proceeding | ☐ 4. Reinstated or Reopened | ☐ 5. Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND<br>$ 9999 | OTHER RELIEF SOUGHT<br>Declaratory Judgment | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR<br>Hampton Bensalem Associates, L.P. | BANKRUPTCY CASE NO.<br>04-22604 (TMT) | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of PA | DIVISION OFFICE   Reading | NAME OF JUDGE  Honorable Thomas M. Twardowski |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| FILING FEE | (Check one box only) | ☐ FEE ATTACHED | ☒ FEE NOT REQUIRED | ☐ FEE DEFERRED |
|---|---|---|---|---|

| DATE<br>10/29/04 | PRINT NAME Michael J. Cordone | SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Michael J. Cordone |
|---|---|---|

Doc #830257v.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| Hampton Bensalem Associates, L.P., | Case No. 04-22604 (TMT) |
| Debtor. | |
| | |
| Hampton Bensalem Associates, L.P., | |
| Plaintiff | |
| v. | ADV. PROCEEDING NO._____ |
| O'Neill Bensalem Properties, L.P., O'Neill Bensalem Properties Acquisition Corporation, J. Brian O'Neill, Hampton N.E. Acquisition Corporation and Hampton Bucks County Associates, L.P., | |
| Defendants | |

## COMPLAINT

Hampton Bensalem Associates, L.P. ("Hampton Bensalem"), the debtor and debtor-in-possession, by its counsel, Stradley, Ronon, Stevens & Young, LLP, alleges as follows:

### NATURE OF THIS ACTION

1. Hampton Bensalem seeks damages and other relief as a result of the efforts of O'Neill Bensalem Properties, L.P. ("O'Neill Bensalem"), O'Neill Bensalem Properties Acquisition Corporation ("O'Neill Acquisition"), J. Brian O'Neill ("O'Neill"), Hampton N.E. Acquisition Corporation ("Hampton Acquisition") and Hampton Bucks County Associates, L.P.

Doc. #807858v.3

("Hampton Bucks County") to deprive Hampton Bensalem of its limited partnership interest in Hampton Bucks County without compensation.

## THE PARTIES

2. Hampton Bensalem, the Plaintiff, filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code on May 14, 2004, and has continued to own its assets and operate its business as a debtor-in-possession.

3. Defendant O'Neill Bensalem is a Pennsylvania limited partnership with an office at 700 S. Henderson Road, Suite 225, King of Prussia, Pennsylvania 19406.

4. Defendant O'Neill Acquisition is a Pennsylvania corporation with an office at 700 S. Henderson Road, Suite 225, King of Prussia, Pennsylvania 19406.

5. Defendant O'Neill is an adult individual residing at 930 Stoke Road, Villanova, Pennsylvania, with an office at 700 S. Henderson Road, Suite 225, King of Prussia, Pennsylvania 19406.

6. Defendant Hampton Acquisition is a Pennsylvania corporation with an office at 700 S. Henderson Road, Suite 225, King of Prussia, Pennsylvania 19406.

7. Defendant Hampton Bucks County is a Pennsylvania limited partnership with an office at 700 S. Henderson Road, Suite 225, King of Prussia, Pennsylvania 19406.

8. As more fully appears from the chart attached hereto as Exhibit "A", the interrelationship of the parties is as follows:

   a. Plaintiff, Hampton Bensalem, was and, as alleged below, remains the 40% limited partner, Defendant O'Neill Bensalem is the 59% limited partner and Defendant Hampton Acquisition is the 1% general partner of Defendant Hampton Bucks County.

Doc. #807858v.3

    b. Defendant O'Neill Acquisition is the 1% general partner and O'Neill Properties Group, L.P. is the 99% limited partner of Defendant O'Neill Bensalem.

    c. Defendant O'Neill is the sole shareholder of Defendant O'Neill Acquisition.

## JURISDICTION AND VENUE

9. This Court has original and exclusive jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a).

10. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a) as a result of the fact that Hampton Bensalem's bankruptcy proceeding is currently pending in this district and some of the claims set forth in this adversary proceeding arise under title 11, while others are related to Hampton Bensalem's bankruptcy case.

11. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O), as it involves a determination of whether Hampton Bensalem retains its limited partnership interest, or the value thereof, in Hampton Bucks County.

## FACTUAL BACKGROUND

12. On or about December 8, 1997, Hampton Bensalem was formed to assume the rights and obligations of its general partner, Hampton N.E. Associates LLC ("Hampton N.E."), as the successful bidder for the purchase of the property formerly known as the Eastern State School and Hospital in Bucks County, Pennsylvania (the "Property").

13. On or about February 12, 1998, Hampton Bensalem, O'Neill Bensalem and Hampton Acquisition formed Hampton Bucks County to complete the purchase of and develop the Property.

14. As consideration for the formation of Hampton Bucks County and the contribution of Hampton Bensalem's rights under the agreement to purchase the Property,

- 3 -

Hampton Bensalem was granted a 40% limited partnership interest in Hampton Bucks County (the "HBC Partnership Interest").

15. In exchange for capital contributions to Hampton Bucks County, O'Neill Bensalem was granted a 59% interest in Hampton Bucks County and Hampton Acquisition was granted the remaining 1% interest in Hampton Bucks County.

16. Subsequent to the formation of Hampton Bucks County, Hampton Bucks County completed the purchase of the Property and began developing it.

17. In order to fund the expenses incurred by Hampton Bensalem to acquire the right to purchase the Property and the other operating expenses of Hampton Bensalem, on October 1, 1999, Hampton Bensalem and its limited partners obtained a loan from Pennsylvania Business Bank in the principal amount of $900,000 (the "Loan"). The Loan was scheduled to mature and be repaid in full on April 1, 2001.

18. As collateral security for the Loan, Pennsylvania Business Bank required Hampton Bensalem to, among other things, pledge to Pennsylvania Business Bank Hampton Bensalem's HBC Partnership Interest.

19. Pursuant to the terms and conditions Hampton Bucks County's limited partnership agreement, the consent of all general and limited partners of Hampton Bucks County is required in order for any partner to assign or pledge its interest in Hampton Bucks County.

20. In exchange for its consent to Hampton Bensalem's pledge of Hampton Bensalem's HBC Partnership Interest to Pennsylvania Business Bank to secure the Loan, Hampton Bucks County received certain rights under a Redemption Agreement dated October 1, 1999, between Pennsylvania Business Bank and Hampton Bucks County (the "Redemption Agreement"), a copy of which is attached hereto as Exhibit "B".

Doc. #807858v.3

21. Hampton Bensalem and all of its partners consented to the terms and conditions of the Redemption Agreement.

22. Paragraph 3 of the Redemption Agreement permitted Hampton Bucks County to redeem Hampton Bensalem's pledged HBC Partnership Interest after the occurrence of an event of default under the Loan by Hampton Bensalem, provided that Hampton Bucks County met the specific terms and conditions set forth in the Redemption Agreement.

23. Paragraph 3 of the Redemption Agreement further permitted Hampton Bucks County to extend the maturity of the Loan for up to <u>one</u> year, to April 1, 2002, if Hampton Bucks County cured any default on the Loan within thirty days of Hampton Bucks County's receipt of a default notice from Pennsylvania Business Bank.

24. On or about January 31, 2001, counsel for Pennsylvania Business Bank sent a letter <u>to Hampton Bensalem</u> and all of its limited partners alleging that Hampton Bensalem and its limited partners had defaulted on their obligations for the repayment of the Loan.

25. On or about February 21, 2001, counsel for Pennsylvania Business Bank sent a letter <u>to Hampton Bucks County</u> alleging that Hampton Bensalem and its limited partners had defaulted on their obligations for the repayment of the Loan.

26. On or about March 24, 2001, Hampton Bucks County allegedly made a payment of $26,000 to Pennsylvania Business Bank on account of amounts due under the Loan.

27. Upon information and belief, Pennsylvania Business Bank thereafter extended the maturity date on the Loan to April 1, 2002.

28. Between March 24, 2001, and May 13, 2004, Hampton Bucks County and/or the other Defendants made several monthly payments to Pennsylvania Business Bank on account of the Loan, some of which were untimely and caused late charges to accrue.

- 5 -

29. On or about March 18, 2002, and in violation of paragraph 3 of the Redemption Agreement, Hampton Bucks County and Pennsylvania Business Bank allegedly entered into a letter agreement (the "Letter Extension") purporting to extend the already extended maturity of the Loan for two additional years, from April 1, 2002, to April 1, 2004.

30. Hampton Bensalem and its limited partners, who were personally obligated for the repayment of the Loan, did not know of or consent to the Letter Extension and did not agree to any change, amendment or modification of the terms and conditions of the Redemption Agreement.

31. In or about April 2002, some or all of the Defendants in this adversary proceeding caused Hampton Bucks County to file and issue to Hampton Bensalem an Internal Revenue Service Schedule K-1 for the calendar year 2001 (the "2001 K-1"), a copy of which is attached hereto as Exhibit "C".

32. In the 2001 K-1, some or all of the defendants caused Hampton Bucks County to state incorrectly that Hampton Bensalem's HBC Partnership Interest had been transferred to O'Neill, effective as of January 1, 2001.

33. Upon information and belief, Hampton Bucks County ceased providing its tax and other financial information to Hampton Bensalem after it delivered the 2001 K-1 to Hampton Bensalem.

34. Upon information and belief, between January 1, 2001, and May 12, 2004, Pennsylvania Business Bank's books and records reflected an outstanding balance on the Loan and Pennsylvania Business Bank continued to hold a security interest in and lien upon Hampton Bensalem's HBC Partnership Interest.

35.    The Loan was not satisfied on or before the alleged second extended maturity date of April 1, 2004, and on or about May 5, 2004, Pennsylvania Business Bank caused its counsel to send Hampton Bensalem and Hampton Bensalem's limited partners a notification (the "Notification") of Pennsylvania Business Bank's intention to dispose of Hampton Bensalem's HBC Partnership Interest pursuant to the provisions of the Uniform Commercial Code as adopted in Pennsylvania. A copy of the Notification is attached hereto as Exhibit "D".

36.    The Notification sated that Pennsylvania Business Bank proposed to sell all of the "partnership interests held by [Hampton Bensalem]…in [Hampton Bucks County]," i.e., Hampton Bensalem's HBC Partnership Interest, by a public sale commencing at 10:00 a.m. on May 20, 2004. The Notification also reserved the right of Pennsylvania Business Bank to sell Hampton Bensalem's HBC Partnership Interest pursuant to a private sale at any time after May 15, 2004.

37.    The Notification from counsel for Pennsylvania Business Bank was the first information received by Hampton Bensalem that disclosed to Hampton Bensalem that the K-1 that Hampton Bensalem received from Hampton Bucks County may have been incorrect and that O'Neill might not have acquired Hampton Bensalem's HBC Partnership Interest in 2001.

38.    In an effort to afford Hampton Bensalem and its limited partners the opportunity to raise the funds necessary to repay the Loan and obtain a release of the HBC Partnership Interest from Pennsylvania Business Bank and thereby preserve Hampton Bensalem's most valuable asset, Hampton Bensalem filed its voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on May 14, 2004.

39.     Unbeknown to Hampton Bensalem and its general and limited partners, on May 13, 2004, Pennsylvania Business Bank allegedly sold and assigned the Loan and all related documents to O'Neill Bensalem.

40.     On May 13, 2004, Hampton Bucks County allegedly satisfied the Loan by paying O'Neill Bensalem the outstanding principal and interest due thereunder.

41.     Neither Pennsylvania Business Bank nor O'Neill Bensalem, the alleged secured creditors holding a security interest in Hampton Bensalem's HBC Partnership Interest, ever completed a public or private sale, pursuant to Article 9 of the Pennsylvania Uniform Commercial Code, of Hampton Bensalem's HBC Partnership Interest in Hampton Bucks County.

42.     Neither Pennsylvania Business Bank nor O'Neill Bensalem ever provided to Hampton Bensalem and its limited partners a notice of their intention to retain Hampton Bensalem's HBC Partnership Interest in full or partial satisfaction of the Loan.

43.     Pursuant to a letter from counsel for Hampton Bucks County and O'Neill Bensalem to counsel for Hampton Bensalem dated May 25, 2004, O'Neill Bensalem alleged that Hampton Bucks County, and not O'Neill, had redeemed Hampton Bensalem's HBC Partnership Interest on or about March 1, 2001, pursuant to the Redemption Agreement, and that Hampton Bucks County, and not O'Neill, owned Hampton Bensalem's HBC Partnership Interest. A copy of the May 25, 2004, letter is attached hereto as Exhibit "E".

## COUNT I
(Declaratory Judgment)

44.     Hampton Bensalem incorporates by reference the allegations in paragraphs 1 through 43 hereof as if set forth in full.

45.     In order for Hampton Bucks County to redeem Hampton Bensalem's HBC Partnership Interest, paragraph 3 of the Redemption Agreement provides as follows:

> For a period of thirty (30) days (the "Redemption Period"), from the date of receipt by [Hampton Bucks County] of any Default Notice [of any uncured default by Hampton Bensalem or its limited partners of the terms and conditions of the Loan], [Hampton Bucks County] is hereby given the sole and exclusive right to redeem the limited partnership interest of [Hampton Bensalem] which has been pledged to [Pennsylvania Business Bank], and to receive such interest free and clear of all liens or encumbrances of [Pennsylvania Business Bank], by either (i) paying within the Redemption Period all sums due [Pennsylvania Business Bank] in satisfaction of the Loan, or (ii) bringing the Loan current within the Redemption Period and thereafter maintaining the Loan current in accordance with its terms, in which event [Hampton Bucks County] may, at its option, extend the term of the Loan for up to one (1) year beyond its present maturity of April 1, 2001; provided, however, that in the event that [Hampton Bucks County] thereafter fails to maintain the Loan in a current status, its right to redeem the limited partnership interest shall terminate in all respects and become null and void, whereupon [Hampton Bucks County] shall have no obligations, or further rights, with respect to the Loan, including, without limitation, any obligation to make payments to [Pennsylvania Business Bank] in satisfaction of the Loan.

46.     Paragraph 4 of the Redemption Agreement further provides:

> In the event the redemption rights granted to [Hampton Bucks County] pursuant to paragraph 3 are not exercised and consummated by [Hampton Bucks County] in accordance with their terms, or in the event [Hampton Bucks County] brings the Loan current but thereafter fails to maintain the Loan in a current status, such rights shall terminate in all respects and become null and void, and [Pennsylvania Business Bank] may thereafter sell, transfer, assign, or otherwise dispose of the limited partnership interest held by [Hampton Bensalem] in and to [Hampton Bucks County] in such manner and to such persons or entities as [Pennsylvania Business Bank], in its sole discretion, deems appropriate, in which event [Hampton Bucks County] agrees to provide to [Pennsylvania Business Bank] any and all consents or other approvals as may be necessary to effectuate such disposition; provided, however, that nothing contained herein shall be deemed or construed to require any other or further amendments to the limited partnership agreement of [Hampton Bucks County].

- 9 -

47. Hampton Bucks County did not satisfy the Loan within thirty (30) days after it received the default notice from counsel for Pennsylvania Business Bank.

48. Hampton Bucks County did not "bring[ ] the loan current" within the thirty (30) days after it received the default notice from counsel for Pennsylvania Business Bank; did not "maintain[ ] the loan current in accordance with its terms"; and did not satisfy the Loan within the permitted one year extension of the April 1, 2001, maturity date.

49. As a result of the failure of Hampton Bucks County to comply with terms and conditions of either of the alternatives in paragraph 3 of the Redemption Agreement, Hampton Bucks County's right to redeem Hampton Bensalem's HBC Partnership Interest under the Redemption Agreement terminated on or before April 1, 2002.

50. Neither Hampton Bensalem nor any of its general or limited partners agreed to extend or modify Hampton Bucks County's right to redeem Hampton Bensalem's HBC Partnership Interest pledged to Pennsylvania Business Bank.

51. Hampton Bucks County did not redeem Hampton Bensalem's HBC Partnership Interest in accordance with the terms and conditions of the Redemption Agreement.

52. Pennsylvania Business Bank did not complete a public or private sale, under Article 9 of the Pennsylvania Uniform Commercial Code, of Hampton Bensalem's HBC Partnership Interest before the Loan was allegedly sold and assigned to O'Neill Bensalem.

53. At the time the Loan was sold and assigned to O'Neill Bensalem, Pennsylvania Business Bank held only a security interest in and lien upon Hampton Bensalem's HBC Partnership Interest.

54. By purchasing the Loan from Pennsylvania Business Bank, O'Neill Bensalem acquired only Pennsylvania Business Bank's rights with regard to the Loan, including its security interest in and lien upon Hampton Bensalem's HBC Partnership Interest.

55. On the date that it filed its bankruptcy case, notwithstanding the redemption and ownership claims asserted by Hampton Bucks County, Hampton Bensalem still owned the HBC Partnership Interest, i.e., a 40% limited partnership interest in Hampton Bucks County, and such asset is an asset of Hampton Bensalem's bankruptcy estate pursuant to 11 U.S.C. § 541(a).

WHEREFORE, Hampton Bensalem respectfully requests the entry of judgment in its favor and against the Defendants, (i) declaring that Hampton Bensalem still owns a 40% limited partnership interest in Hampton Bucks County and all rights attendant thereto, and (ii) awarding such other and further relief as is just and equitable.

## COUNT II
(Breach of Limited Partnership Agreement)

56. Hampton Bensalem incorporates by reference the allegations in paragraphs 1 through 55 hereof as if set forth in full.

57. On or about February 12, 1998, Hampton Bensalem, O'Neill Bensalem and Hampton Acquisition entered into an Agreement of Limited Partnership of Hampton Bucks County Associates, L.P. a Pennsylvania Limited Partnership (the "Hampton Bucks County Partnership Agreement"), a copy of which is attached hereto as Exhibit "F".

58. Pursuant to Section 10.1(a), the Hampton Bucks County Partnership Agreement permits limited partnership interests in Hampton Bucks County to be sold, transferred or otherwise assigned "only upon obtaining the written consent of all [limited and general partners of Hampton Bucks County]" and permits such consent to be withheld arbitrarily.

59. Hampton Bensalem did not consent to the transfer or assignment of Hampton Bensalem's HBC Partnership Interest on any terms and conditions other than as set forth in the Redemption Agreement and never agreed to extend the redemption period.

60. Pursuant to Section 13.1 of the Hampton Bucks County Partnership Agreement, Hampton Bucks County is required to keep accurate books and records of all partnership transactions and to make those books and records available for the partners, including representatives of Hampton Bensalem, to inspect at any reasonable time.

61. The Defendants caused Hampton Bucks County to issue the 2001 K-1, which contained inaccurate and misleading information concerning the status and ownership of Hampton Bensalem's HBC Partnership Interest, and failed or refused to provide or make available to Hampton Bensalem the books and records of Hampton Bucks County.

62. Pursuant to Section 13.3 of the Hampton Bucks County Partnership Agreement, Hampton Acquisition, in its capacity as the general partner of Hampton Bucks County, was required to: (i) engage accountants to prepare annual financial reports, income tax returns and schedule K-1s; and (ii) deliver copies of such reports, returns and schedules to each of the partners of Hampton Bucks County, including Hampton Bensalem.

63. Other than the 2001 K-1, containing inaccurate and misleading information, Hampton Acquisition did not provide any such financial reports, income tax returns or Schedules K-1 to Hampton Bensalem.

64. Hampton Acquisition and O'Neill Bensalem each breached their obligations to Hampton Bensalem under the Hampton Bucks County Partnership Agreement by allegedly causing Hampton Bensalem's HBC Partnership Interest to be transferred to and redeemed by Hampton Bucks County without the prior written consent of Hampton Bensalem.

Doc. #807858v.3

65. As a result of the alleged transfer and redemption by Hampton Bucks County of Hampton Bensalem's HBC Partnership Interest without Hampton Bensalem's knowledge or written consent, Hampton Bensalem has suffered damages in an amount equal to the value of its the HBC Partnership Interest, which, upon information and belief, is in excess of $12,000,000.

66. Hampton Acquisition has failed to deliver complete and accurate financial reports, tax returns and Schedules K-1 to Hampton Bensalem when and as required by the Hampton Bucks County Partnership Agreement.

67. As a result of Hampton Acquisition's failure or refusal to provide accurate financial reports, tax returns and Schedules K-1 to Hampton Bensalem, Hampton Acquisition, acting in concert with one or more of the Defendants, mislead Hampton Bensalem into believing that (i) Hampton Bensalem's HBC Partnership Interest had been redeemed in 2001and (ii) Hampton Bensalem's HBC Partnership Interest had little or no value, both of which induced Hampton Bensalem to refrain from taking action to preserve and protect Hampton Bensalem's HBC Partnership Interest until after its interest was allegedly redeemed by Hampton Bucks County on May 13, 2004.

68. As a result of Hampton Acquisition's breaches of the Hampton Bucks County Partnership Agreement, Hampton Bensalem has suffered damages in an amount equal to the value Hampton Bensalem's HBC Partnership Interest.

WHEREFORE, Hampton Bensalem respectfully requests (i) the entry of judgment in its favor and against O'Neill Bensalem and Hampton Acquisition in an amount exceeding $12,000,000 for damages suffered by Hampton Bensalem; (ii) an order compelling Hampton Acquisition to provide to Hampton Bensalem financial reports, leases, agreements of

- 13 -

sale, projections and reasonable access to the books and records of Hampton Bucks County; and (iii) such other and further relief as is just and equitable.

### COUNT III
(Fraud)

69. Hampton Bensalem incorporates by reference the allegations in paragraphs 1 through 68 hereof as if set forth in full.

70. Upon information and belief, some or all of the Defendants caused Hampton Bucks County to deliver the 2001 K-1 to Hampton Bensalem.

71. The 2001 K-1 stated that Hampton Bensalem's HBC Partnership Interest had been transferred to O'Neill, effective as of January 1, 2001.

72. At the time that the 2001 K-1 was delivered, neither Hampton Bucks County nor O'Neill had redeemed, foreclosed, purchased or otherwise acquired any interest in Hampton Bensalem's HBC Partnership Interest.

73. The Defendant or Defendants responsible for the preparation and delivery of the 2001 K-1 to Hampton Bensalem issued it intending Hampton Bensalem and its partners to believe that Hampton Bensalem's HBC Partnership Interest had been assigned to O'Neill.

74. After issuance of the 2001 K-1, some or all of the Defendants caused Pennsylvania Business Bank to change its records regarding the Loan in order to ensure that account statements for the Loan were no longer sent to Hampton Bensalem.

75. After it received the 2001 K-1 and the Defendants caused the cessation of all communications from Pennsylvania Business Bank, Hampton Bensalem and its partners reasonably believed that the Loan had been repaid and that Hampton Bensalem's HBC Partnership Interest had been redeemed.

Doc. #807858v.3

76. As a result of the misrepresentation of some or all of the Defendants in the 2001 K-1, Hampton Bensalem and its limited partners refrained from raising the funds necessary to satisfy the Loan.

77. Had Hampton Bensalem and its partners known the truth about Hampton Bensalem's HBC Partnership Interest, they would have been able to raise the money necessary to repay the Loan and thereby prevent the loss of Hampton Bensalem's HBC Partnership Interest.

78. Hampton Bensalem and its partners first learned that the Loan was not satisfied and that Hampton Bensalem's HBC Partnership Interest had not been redeemed on May 5, 2004, when they received the Notification from Pennsylvania Business Bank, and Hampton Bensalem had insufficient time, in the eight days between the date of the Notification and the date that O'Neill Bensalem purchased the Loan, to obtain the funds to satisfy the Loan themselves.

79. As a result of its receipt of the 2001 K-1 and its reasonable reliance thereon, Hampton Bensalem was damaged and deprived of its HBC Partnership Interest without the opportunity to obtain new financing or the additional capital needed to preserve Hampton Bensalem's most valuable asset.

WHEREFORE, Hampton Bensalem respectfully requests (i) the entry of judgment in its favor and against O'Neill Bensalem, O'Neill, Hampton Acquisition and Hampton Bucks County in an amount exceeding $12,000,000 for damages suffered by Hampton Bensalem; and (ii) such other and further relief as is just and equitable.

## COUNT IV
(Fraudulent Transfer)

80. Hampton Bensalem incorporates by reference the allegations in paragraphs 1 through 79 hereof as if set forth in full.

Doc. #807858v.3

81. On or about May 13, 2004, one day prior to Hampton Bensalem's bankruptcy filing, Hampton Bucks County or O'Neill Bensalem allegedly acquired Hampton Bensalem's HBC Partnership Interest in exchange for the alleged repayment and satisfaction of the Loan from Pennsylvania Business Bank.

82. At the time of the alleged transfer of Hampton Bensalem's HBC Partnership Interest, the HBC Partnership Interest was worth in excess of $12,000,000.

83. Hampton Bensalem did not receive reasonably equivalent value from Hampton Bucks County or O'Neill Bensalem in exchange for Hampton Bensalem's HBC Partnership Interest.

84. On or about May 13, 2004, Hampton Bensalem's only significant asset was the HBC Partnership Interest.

85. Hampton Bensalem and its general partner were either insolvent on May 13, 2004, or became insolvent as a result of the alleged involuntary transfer of Hampton Bensalem's HBC Partnership Interest to O'Neill Bensalem or Hampton Bucks County.

WHEREFORE, Hampton Bensalem respectfully requests (i) the entry of judgment in its favor and against O'Neill Bensalem and Hampton Bucks County voiding the alleged transfer of Hampton Bensalem's HBC Partnership Interest and (ii) such other and further relief as is just and equitable.

## COUNT V
(Promissory Estoppel)

86. Hampton Bensalem incorporates by reference the allegations in paragraphs 1 through 85 hereof as if set forth in full.

87. On or about May 5, 2004, Pennsylvania Business Bank sent Hampton Bensalem and its limited partners the Notification advising them that Pennsylvania Business

Bank proposed to sell all of Hampton Bensalem's HBC Partnership Interest pursuant to a private sale at any time after May 15, 2004, or at a public sale on May 20, 2004.

88. Upon information and belief, on May 13, 2004, O'Neill Bensalem purchased the Loan from Pennsylvania Business Bank and received an assignment of all of Pennsylvania Business Bank's rights and obligations under the documents evidencing the Loan.

89. After allegedly purchasing the Loan, O'Neill Bensalem, as successor by assignment to Pennsylvania Business Bank, was bound by the Notification given by Pennsylvania Business Bank advising Hampton Bensalem and its limited partners that Hampton Bensalem's HBC Partnership Interest would not be sold publicly or privately before May 15, 2004.

90. In filing its bankruptcy on May 14, 2004, to afford itself the opportunity to refinance the Loan, Hampton Bensalem justifiably relied upon the promise in the Notification that Hampton Bensalem's HBC Partnership Interest would not be transferred before May 15, 2004.

91. On May 13, 2004, in breach of the promise in the Notification, O'Neill Bensalem, acting through its general partner, O'Neill Acquisition, transferred Hampton Bensalem's HBC Partnership Interest to Hampton Bucks County.

92. O'Neill Bensalem's material breach of its obligations to Hampton Bensalem under the Notification has directly and proximately caused Hampton Bensalem damages in an amount exceeding $12,000,000.

WHEREFORE, Hampton Bensalem respectfully requests (i) the entry of judgment in its favor and against O'Neill Bensalem and O'Neill Acquisition in an amount

Doc. #807858v.3

exceeding $12,000,000 for damages suffered by Hampton Bensalem; and (ii) such other and further relief as is just and equitable.

## COUNT VI
(Failure to Comply with the Uniform Commercial Code)

93. Hampton Bensalem incorporates by reference the allegations in paragraphs 1 through 92 hereof as if set forth in full.

94. Upon information and belief, O'Neill Bensalem has succeeded to the rights and obligations of Pennsylvania Business Bank as the secured creditor on the Loan.

95. O'Neill Bensalem is bound by the Notification sent by Pennsylvania Business Bank.

96. O'Neill Bensalem has failed to comply with the provisions of Article 9 of the Pennsylvania Uniform Commercial Code by virtue of, among other things, its failure to provide to Hampton Bensalem and its partners accurate notification of its intended disposition of its collateral, the HBC Partnership Interest.

97. O'Neill Bensalem has never sent any proposal to Hampton Bensalem and its partners for O'Neill Bensalem to retain Hampton Bensalem's HBC Partnership Interest in full or partial satisfaction of the Loan.

98. After it defaulted on the Loan, Hampton Bensalem has never consented to its lender's retention of Hampton Bensalem's HBC Partnership Interest in full or partial satisfaction of the Loan.

99. Under the Pennsylvania Uniform Commercial Code, Hampton Bucks County was not eligible to redeem Hampton Bensalem's HBC Partnership Interest.

Doc. #807858v.3

100. Hampton Bucks County did not comply with the terms, covenants and conditions set forth in the Redemption Agreement in its alleged redemption of Hampton Bensalem's HBC Partnership Interest.

101. As a direct and proximate result of O'Neill Bensalem's failure to comply with the provision of Article 9 of the Pennsylvania Uniform Commercial Code, Hampton Bensalem has suffered damages in excess of $12,000,000.

WHEREFORE, Hampton Bensalem respectfully requests (i) the entry of judgment in its favor and against O'Neill Bensalem and O'Neill Acquisition in an amount exceeding $12,000,000 for damages suffered by Hampton Bensalem; and (ii) such other and further relief as is just and equitable.

Dated: October 28, 2004

/s/ Michael J. Cordone
Lee A. Rosengard
Michael J. Cordone
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA  19103-7098
(215) 564-8032 Phone
(215) 564-8120 Fax

Attorneys for the Debtor,
Hampton Bensalem Associates, L.P.